IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| WENDELL R. MITCHELL, #1368068 | § | |
| VS. | § | CIVIL ACTION NO. 6:10cv287 |
| AMAHDRICK D. CHRISTOPHER, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Wendell R. Mitchell, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The sole defendant remaining in the case is Amahdrick D. Christopher (hereinafter "Defendant"). The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion concerns the Plaintiff's motion for summary judgment (docket entry #40), the Defendant's response (docket entry #43) and the Defendant's motion for summary judgment (docket entry #41).

Plaintiff's Factual Allegations

The Plaintiff alleged that he was the victim of excessive use of force. On October 26, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. He testified that the incident occurred at the Coffield Unit on June 12, 2008. The incident occurred after he was handcuffed and removed from his cell. The Defendant escorted the Plaintiff off of his housing wing, and they eventually reached the infirmary. Along the way, the Defendant allegedly used profanity and threatened the Plaintiff.

1

When the Defendant threatened to slam the Plaintiff on the ground, the Plaintiff replied that he would sue him if he slammed him on the ground. The Plaintiff testified that the Defendant then responded by lifting him off of the floor and slamming him on the ground on his left side. His left shoulder and knee were injured. Pursuant to policy, the Defendant was then relieved by other officers, and he left the area.

Plaintiff's Motion for Summary Judgment

The Plaintiff filed a motion for summary judgment (docket entry #40) on March 14, 2011. He motion consists of four paragraphs, along with his own handwritten declaration. He asserted that the evidence submitted to the Court shows that he was the victim of excessive use of force and that the Defendant also violated various Texas laws. In his affidavit, the Plaintiff asserted that the Defendant assaulted him at the Coffield Unit on June 12, 2008. He added that the Defendant has a history of engaging in excessive and unnecessary force against inmates.

Defendant's Response

The Defendant filed a response to the Plaintiff's motion for summary judgment (docket entry #43) on March 16, 2011. He specified that he opposes the motion on procedural and substantive grounds. He noted that the Plaintiff failed to comply with Local Rule CV-56 that provides that "[a]ny motion for summary judgment must include: (1) a statement of issues to be decided by the court; and (2) a 'Statement of Undisputed Material Facts.'" He further noted that the Plaintiff failed to satisfy his burden of showing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). He noted that the Plaintiff failed to present any arguable basis in law or fact for summary judgment in his favor. The Defendant stressed that the Plaintiff did not submit any evidence to support his motion; instead, he submitted only conclusory allegations, which

are not enough to sustain his burden at the summary judgment stage of the proceedings. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). He asked the Court to deny the Plaintiff's motion for summary judgment.

## Defendant's Motion for Summary Judgment

The Defendant filed a motion for summary judgment (docket entry #41) on March 14, 2011. In support of the motion, he attached relevant portions of a use of force report, along with Plaintiff's medical records and classification records. He argued that he is entitled to summary judgment based on Eleventh Amendment immunity, qualified immunity, official immunity regarding the supplemental state claims, and principles set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). The details of the arguments shall be fully discussed in the Discussion and Analysis section of this Memorandum Opinion.

## Plaintiff's Response

The Plaintiff did not file a response to the Defendant's motion for summary judgment. The Scheduling Order gave him a deadline of April 4, 2011 to file a response, but he failed to do so.

## Discussion and Analysis

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. at 323; *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001); *Ragas v. Koch Gateway Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). All reasonable inferences are drawn in favor of the nonmoving party, but the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Most recently, the Fifth Circuit noted that

although it has recognized that inmate affidavits and grievance reports constitute valid summary judgment evidence, "that without more, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden and defeat a motion for summary judgment." *Mosley v. White*, No. 09-41091 at *12 (5th Cir. Dec. 13, 2010) (internal quotations and citations omitted).

Courts must employ summary judgment procedures cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The Court will initially discuss the Defendant's motion for summary judgment. He presented four arguments as to why he is entitled to summary judgment. The first argument concerned Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims brought against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The Plaintiff may not recover damages from the Defendant to the extent that he has sued the Defendant in his official capacity.

The second argument concerns *Heck v. Humphrey*, *supra*, and *Edwards v. Balisok*, *supra*. The Supreme Court held that a plaintiff who seeks to recover damages under § 1983 for actions whose unlawfulness would render a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. at 486-87. The Supreme Court provided the following explanation:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 486. The Supreme Court thus held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. The Supreme Court extended the reasoning in *Heck* to prison disciplinary cases in *Edwards v. Balisok*. "Claims for damages and declaratory relief challenging the procedures used in, but not the results of, prison disciplinary proceedings are similarly not cognizable in a § 1983 action until the relevant 'conviction' has been reversed, expunged, or otherwise declared invalid if a favorable judgment would 'necessarily imply' the invalidity of the prisoner's 'conviction' in the disciplinary proceeding or the length of the prisoner's confinement." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (*en banc*) (citing *Edwards v. Balisok*, 520 U.S. at 646).

The Defendant's summary judgment evidence included prison disciplinary records showing that the Plaintiff was found guilty of a Code 23 violation for creating a disturbance and a Code 24 violation for refusing to obey orders as a result of the incident that forms the basis of the lawsuit.

He argued that like the prisoner in *Edwards*, the Plaintiff's claims under § 1983 threaten the validity of his prison disciplinary case. The Defendant noted that the punishment included the loss of 180 days good time credit. The behavior attributed to the Plaintiff in the disciplinary case included yelling, cursing, walking improperly, failing to obey orders, and resisting and pulling away from the Defendant. The Plaintiff denied he engaged in such conduct. The Defendant asserted that the Plaintiff's conduct caused the incident to escalate and resulted in the need for force to be used. He argued that a judgment in the Plaintiff's favor in this case would affect the validity of the underlying conviction or duration of the Plaintiff's sentence. He noted that the Plaintiff has not shown that the disciplinary case has been reversed or otherwise invalidated. He argued that the Plaintiff's claims fall within the scope of *Heck* and are barred until the Plaintiff can fulfill the *Heck* requirement. In support of the argument, he cited the Fifth Circuit's decision in *Bradshaw v. Unknown Lieutenant*, 48 Fed. Appx. 106 (5th Cir. 2002) (Plaintiff's claim that prison officials filed false disciplinary charges against which stemmed from the use of force incident is *Heck* barred because he has not shown that the disciplinary action has been reversed).

Counsel for the Defendant and the Court recently had a case decided by the Fifth Circuit where this Court had concluded that an excessive use of force claim should be dismissed in light of *Heck* and *Edwards* in *Mosley v. White*, No. 09-41091 (5th Cir. Dec. 13, 2010) (unpublished). The Fifth Circuit affirmed the decision granting summary judgment but disagreed with the decision regarding *Heck* and *Edwards*. The Fifth Circuit provided the following explanation:

> In *Muhammad v. Close*, 540 U.S. 749, 751 (2004), the Supreme Court reiterated that *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for his [underlying] conviction or the duration of his sentence." Muhammad had not lost any good time credits in conjunction with his disciplinary conviction. *Id.* at 752-53; *see also Mahogany v. Stalder*, 242 F. App'x 261, 263 (5th Cir. 2007) (holding claim for damages

> arising from failure to receive written statement of evidence relied on in disciplinary proceeding was not barred by *Heck* and *Edwards* because such damages go to the deprivation of civil rights, not the deprivation of good time credits).
>
> Like the prisoner in *Muhammad*, Mosley does not challenge the length of his confinement, seek the restoration of good time credits, or seek the expungement of a disciplinary conviction that resulted in the loss of good time credit. Success in the instant action would not affect the validity of Mosley's underlying conviction or the duration of his sentence. *See Muhammad*, 540 U.S. at 751 & n.1 (noting that "[t]he assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not the special disciplinary confinement for infraction of prison rules."). Therefore, the district court erred in determining that his excessive force claim was barred by *Heck* and *Edwards*. *See Muhammad*, 540 U.S. at 754-55.

*Mosley*, slip op. at 7-8.

The opinion in *Mosley* was unpublished, but the Court would be remiss in ignoring the reasoning provided by the Fifth Circuit based on the Supreme Court's decision in *Muhammad*. The records submitted in this case at the *Spears* hearing included the Plaintiff's prison commitment records. The records reveal that he is in custody pursuant to a 2006 Harris County conviction for attempted capital murder and that he is not eligible for release on mandatory supervision, thus the loss of good time had no bearing on his release date. *Teague v. Quarterman*, 482 F.3d 769, 774-75 (5th Cir. 2007) (inmate has a protected liberty interest in good conduct time only if he is eligible for release on mandatory supervision); *Madison v. Parker*, 104 F.3d 765, 769 (5th Cir. 1997). Success in this action would not affect the validity of the Plaintiff's underlying conviction or the duration of his sentence. Like the situation in *Mosley*, the excessive use of force claim in this case is not barred by *Heck* and *Edwards*. The Defendant's second argument does not provide a basis for summary judgment under the facts of this case.

The Defendant next argued that he is entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects government officials performing

8

discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). Under the traditional approach, a court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted). More recently, the Supreme Court held that a case may be dismissed based on either step in the qualified immunity analysis: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

With respect to the first step in the qualified immunity analysis, the constitutional question at stake in the present case is whether the Plaintiff was the victim of excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words,

9

there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). On the other hand, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must

always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). In *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997), the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting the inmate's ear was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit. In *Gomez v. Chandler*, 163 F.3d at 924-25, the Fifth Circuit held that injuries consisting of pain and "cuts, scrapes, contusions to the face, head and body" that resulted from an inmate being knocked down, punched and kicked and that required medical treatment were more than *de minimis*. The Fifth Circuit also noted that even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.* at 924.

The Fifth Circuit has additionally held that the question of whether the force used was more than *de minimis* must be evaluated in the context in which the force was deployed. In *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996), the Fifth Circuit explained that the amount of injury necessary to satisfy the requirement of some injury and to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. In *Williams v. Bramer*, 180 F.3d 703, 704 (5th Cir. 1999), the Fifth Circuit held that what constitutes an injury is subjective and defined entirely by the context in which the injury arises. Two chokings occurred in *Williams*. The first choking occurred when an officer attempted to search the plaintiff's mouth, which resulted in fleeting dizziness, temporary loss of breath and coughing. The Fifth Circuit held that the use of force did not rise to the level of a constitutional violation under the circumstances. *Id.* at 704. The second choking was the product of a malicious choking. The plaintiff again suffered dizziness, coughing, and a loss of breath. The Fifth Circuit held that the injuries, although the same

as before, qualified as a cognizable injury since the officer's actions were the product of maliciousness, as opposed to a legitimate search. *Id.*

The Defendant initially focused on the Plaintiff's injuries. The Plaintiff asserted that his shoulder, lower back and knee were injured as a result of the use of force incident. The Defendant submitted competent summary judgment evidence in the form of the Plaintiff's medical records in support of an argument that the Plaintiff's injuries were *de minimis*. After the use of force incident, the Plaintiff complained of left shoulder pain to Nurse Gilmartin and PA Nolen. Nolen noted limited range of motion due to cuffs and no visible swelling or discoloration. Nevertheless, Nolen ordered x-rays of the Plaintiff's left shoulder, which came back negative. The Defendant noted that the Plaintiff made no complaint of back injury from the use of force incident but rather complained that the back pain was the result of an incident in May of 2008 and it was being treated with Ibuprofen. The Plaintiff did not complain of knee pain from the use of force incident; instead, he complained of knee pain from an incident that occurred on June 5, 2008, involving a motor vehicle accident. On June 20, 2008, the Plaintiff's left knee was x-rayed and the results were negative. The Defendant appropriately argued that the summary judgment evidence shows that the Plaintiff suffered no injury and his unsupported allegations of pain are not sufficient to demonstrate anything more than a *de minimis* injury. *Grimes v. Texas. Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996). The Plaintiff did not present nor cite any competent summary judgment evidence in response showing that he suffered injuries which were more than *de minimis*.

The Defendant further appropriately argued that the injuries the Plaintiff suffered were not the result of force that was "repugnant to the conscience of mankind." It is again noted that the Plaintiff received a disciplinary case because he engaged in yelling, cursing, walking improperly,

failing to obey orders, and resisting and pulling away from the Defendant. The Defendant submitted competent summary judgment evidence documenting that Lt. Woodward witnessed the Plaintiff pulling away from the Defendant and that he provided help to restrain the Plaintiff. The Defendant argued that his actions were neither malicious nor sadistic but were necessary to subdue the Plaintiff, who had pulled away. The Plaintiff did not present nor cite any competent summary judgment evidence supporting a conclusion that the Defendant's actions were repugnant to the conscience of mankind. The Court thus finds that the Plaintiff's injuries did not rise above the *de minimis* threshold, as that concept was defined by the Supreme Court. The Defendant is entitled to summary judgment for that reason alone.

The Defendant proceeded to address the remaining *Hudson* factors. The next factor to consider was the need for the application of force. The competent summary judgment evidence shows that the Plaintiff was resisting and that he pulled away from the Defendant, which resulted in the Defendant restraining the Plaintiff on the ground. The Plaintiff was not obeying the Defendant's orders and became belligerent. Force was thus necessary and appropriate to restore order and discipline.

The third *Hudson* factor was the relationship between the need and amount of force. The Defendant noted that he initially gave verbal orders to the Plaintiff, but the Plaintiff was noncompliant. The Plaintiff then escalated the situation by pulling away from the Defendant. The Defendant responded by using the minimum amount of force necessary by restraining the Plaintiff on the ground. Lt. Woodward observed the Plaintiff stop resisting once he was placed on the ground. No other force was employed since the Plaintiff became compliant.

13

The final *Hudson* factor concerned efforts to temper the severity of the response. The Defendant asserted that he talked to the Plaintiff and ordered him to stop resisting. The Plaintiff, however, refused to obey the order. When the Plaintiff attempted to break free from the Defendant who was escorting him, the Defendant needed to employ more than just verbal orders to prevent the Plaintiff from fleeing and to control him. The Defendant clearly attempted to employ efforts short of the use of force before resorting to the use of force.

The Plaintiff did not discuss the *Hudson* factors. He was placed on notice of the *Hudson* standard and the various factors to consider in a use of force claim when the Court issued the Order of Partial Dismissal. Nonetheless, he failed to discuss the factors and how they apply in this case. He did not present nor cite any competent summary judgment evidence standing for the proposition that he was the victim of excessive use of force. The Court is of the opinion, and so finds, that the Plaintiff has not satisfied his burden on summary judgment of showing that he was the victim of excessive use of force. The Defendant is entitled to summary judgment on the first prong in the qualified immunity analysis.

The second prong in the qualified immunity analysis concerns the objective reasonableness of the Defendant's actions. The Plaintiff did not show that the Defendant's actions were objectively unreasonable. Indeed, he failed to address the issue. By comparison, the Defendant submitted competent summary judgment evidence supporting a conclusion that his actions were not sadistic nor malicious but were reasonable for the purpose of restoring order. The Defendant is entitled to summary judgment based on the second prong in the qualified immunity analysis. The Defendant is entitled to summary judgment based on qualified immunity.

The Defendant next discussed the Plaintiff supplemental state claims. Since the primary constitutional claims should be dismissed, the Court should not consider the pendent state claims. The state claims should be dismissed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966); *Hamill v. Wright*, 870 F.2d 1032, 1038 (5th Cir. 1989). Nonetheless, even if the Plaintiff were permitted to proceed on his supplemental state claims, his claims would have to be dismissed based on official immunity under Texas state law. *See Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997) (holding that officers who were entitled to qualified immunity on federal constitutional claims were also entitled to official immunity on state intentional tort claims).

In conclusion, the Defendant has shown that he is entitled to summary judgment. By comparison, the Plaintiff made nothing more than a conclusory claim that he is entitled to summary judgment. The Defendant correctly argued that the Plaintiff's motion should be denied on both procedural and substantive grounds. The Defendant's motion for summary judgment should be granted and the case dismissed. It is accordingly

**ORDERED** that the Defendant's motion for summary judgment (docket entry #41) is **GRANTED** and the case is **DISMISSED** with prejudice. All other motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **13** day of **April, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE